IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 08-00337 JMS |
| | ) | |
| Plaintiff, | ) | ORDER (1) DENYING DEFENDANT'S |
| | ) | MOTION TO DISMISS COUNTS 4 |
| vs. | ) | AND 6 OF THE SECOND |
| | ) | SUPERCEDING INDICTMENT; |
| ROBERT TAM HO, | ) | (2) DENYING DEFENDANT'S |
| | ) | MOTION TO DISMISS COUNTS 5 |
| Defendant. | ) | AND 7 OF THE SECOND |
| | ) | SUPERCEDING INDICTMENT; AND |
| | ) | (3) DENYING DEFENDANT'S |
| | ) | MOTION TO SEVER CIVIL RIGHTS |
| | ) | COUNTS FROM WITNESS |
| | ) | TAMPERING COUNTS, OR, IN THE |
| | ) | ALTERNATIVE, TO BIFURCATE |
| _____ | ) | TRIAL |

**ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS COUNTS 4 AND 6 OF THE SECOND SUPERCEDING INDICTMENT; (2) DENYING DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 7 OF THE SECOND SUPERCEDING INDICTMENT; AND (3) DENYING DEFENDANT'S MOTION TO SEVER CIVIL RIGHTS COUNTS FROM WITNESS TAMPERING COUNTS, OR, IN THE ALTERNATIVE, TO BIFURCATE TRIAL**

## I.  INTRODUCTION

The Second Superseding Indictment ("SSI"), filed March 11, 2009,

charges Defendant Robert Tam Ho ("Defendant") with three counts of unlawful

use of force under color of law in violation of 18 U.S.C. § 242 (Counts 1-3), and

four counts of witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and

1512(b)(3) (Counts 4-7).  Currently before the court are Defendant's two Motions to Dismiss -- one arguing that the SSI fails to state violations of § 1512(b)(1) ("Def.'s Mot. 1"), and the other arguing that the SSI fails to state violations of § 1512(b)(3) ("Def.'s Mot. 2") -- as well as Defendant's Motion to Sever Civil Rights Counts from the Witness Tampering Counts ("Def.'s Mot. to Sever"). Based on the following, the court DENIES Defendant's Motions to Dismiss and DENIES Defendant's Motion to Sever.

## II.  <u>BACKGROUND</u>

As alleged in the SSI, Defendant was the Security Manager for Wackenhut Security Corporation at the Kahului Airport in Maui, which provides on-site security for the airport through a contract with the State of Hawaii Department of Transportation.  SSI ¶ 1.  Defendant was the direct supervisor of the "Law Enforcement Officers," ("LEOs"), who have full "peace officer" authority pursuant to Hawaii state law, including the authority to arrest and detain individuals suspected of criminal activity.  *Id.*

On October 20, 2005, during a meeting with Pacific Wings Airline employees G.K., W.G., and others, Defendant got into a verbal confrontation with G.K. and left the meeting.  *Id.* ¶¶ 2-4.  Defendant returned with two LEOs, advised G.K. that he was placing him under "citizen's arrest" for "harassment," and

directed the LEOs to effectuate the arrest.  *Id.* ¶¶ 5-6.  Defendant also ordered the

other individuals to leave the conference room, and then repeatedly struck W.G.

after he refused to leave.  *Id.* ¶¶ 7-9.  When Maui Police Department ("MPD")

officers arrived, Defendant requested them to place both G.K. and W.G. in

custody, where they were held until bail was posted for their release.  *Id.* ¶ 13.

Based on these events, Count 1 alleges that Defendant, "while acting

under color of the laws of the State of Hawaii, . . . did wilfully deprive W.G. of his

right secured by the Constitution and laws of the United States not to be deprived

of liberty without due process of law . . . ."  *Id.* ¶ 11.  Similarly, Count 2 alleges

that Defendant, "while acting under color of the laws of the State of Hawaii, did

wilfully deprive W.G. of his right secured by the Constitution and laws of the

United States to be free from unreasonable seizure by one acting under color of law

. . . ."  *Id.* ¶ 14.  Count 3 alleges that Defendant, "while acting under color of the

laws of the State of Hawaii, . . . did wilfully deprive G.K. of his right secured by

the Constitution and laws of the United States to be free from unreasonable seizure

by one acting under color of law . . . ."  *Id.* ¶ 16.

The SSI further alleges that on that same day, Defendant approached

J.W. to discuss the witness statement she intended to give to MPD and told her that

she should state that she was heading home for the day at the time of the incident

and did not see what happened because her view was blocked by other people. *Id.* ¶ 18. J.W. knew this version was untrue, but repeated this version to MPD anyway. *Id.* Count 4 therefore alleges that Defendant "did knowingly and corruptly persuade J.W. to give false information with respect to the physical assault perpetuated by [Defendant] upon W.G., with the intent to influence, delay or prevent the testimony of J.W. in an official proceeding." *Id.* ¶ 19. Count V similarly alleges that Defendant "did knowingly and corruptly persuade J.W. to give false information with respect to the physical assault perpetuated by [Defendant] upon W.G., with the intent to hinder, delay and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, namely the deprivation of rights under color of law . . . ." *Id.* ¶ 21.

Finally, the SSI alleges that on the next day, October 21, 2005, Defendant directed J.W. to prepare a written witness statement summarizing a false version of events of October 20, 2005. As in Count 4, Count 6 alleges that Defendant "did knowingly and corruptly persuade J.W. to give false information with respect to the physical assault perpetuated by [Defendant] upon W.G., with the intent to influence, delay or prevent the testimony of J.W. in an official proceeding." *Id.* ¶ 27. Similar to Count 5, Count 7 alleges that Defendant "did

knowingly and corruptly persuade J.W. to give false information with respect to

the physical assault perpetuated by [Defendant] upon W.G., with the intent to

hinder, delay and prevent the communication to a law enforcement officer of the

United States of information relating to the commission or possible commission of

a Federal offense, namely the deprivation of rights under color of law . . . ." *Id.*

¶ 29.

### III.  <u>STANDARDS OF REVIEW</u>

**A.     Motion to Dismiss**

Federal Rule of Criminal Procedure 12(b) allows consideration at the

pretrial stage of any defense "which is capable of determination without the trial of

the general issue."  *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).  "On a

motion to dismiss an indictment for failure to state an offense, the court must

accept the truth of the allegations in the indictment in analyzing whether a

cognizable offense has been charged.  The indictment either states an offense or it

doesn't."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citing *United

States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).

An indictment need only be a "plain, concise, and definite written

statement of the essential facts constituting the offense charged."  Fed. R. Crim. P.

7(c)(1).  *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009), recently

explained the standard for determining when this standard is met:

> An indictment is sufficient if it contains "the elements of the
> charged crime in adequate detail to inform the defendant of the
> charge and to enable him to plead double jeopardy."  *United
> States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995) (internal
> quotation signals omitted).  The test for sufficiency of the
> indictment is "not whether it could have been framed in a more
> satisfactory manner, but whether it conforms to minimal
> constitutional standards."  *United States v. Hinton*, 222 F.3d
> 664, 672 (9th Cir. 2000).

An indictment that tracks the offense in the words of the statute is

sufficient if those words fully, directly, and expressly set forth all the elements

necessary to constitute the offense intended to be proved.  *See Hamling v. United

States*, 418 U.S. 87, 117-18 (1974); *United States v. Tavelman*, 650 F.2d 1133,

1137 (9th Cir. 1981).  "While the indictment may be insufficient if it fails to allege

an essential element of the offense, nevertheless the indictment should be read in

its entirety, construed according to common sense and interpreted to include facts

which are necessarily implied."  *United States v. Drew*, 722 F.2d 551, 552 (9th Cir.

1983) (citations omitted); *cf. United States v. Pernillo-Fuentes*, 252 F.3d 1030,

1032 (9th Cir. 2001) ("An indictment's failure to 'recite an essential element of the

charged offense is not a minor or technical flaw . . . but a fatal flaw requiring

dismissal of the indictment.'" (quoting *United States v. Du Bo*, 186 F.3d 1177,

1179 (9th Cir. 1999))).  An indictment that follows the statutory language, and

otherwise puts the accused on fair notice of all the implied elements of the charge,

is not also required to incorporate judicial decisions that have interpreted that

language.  *See United States v. Godinez-Rabadan*, 289 F.3d 630, 634 (9th Cir.

2002); *see also United States v. Renteria*, 557 F.3d 1003, 1006 (9th Cir. 2009)

(discussing previous opinion that rejected argument that indictment must include

allegations that are merely "judicial gloss" upon the statutory language).

   "[A] Rule 12(b) motion to dismiss is not the proper way to raise a

factual defense."  *Nukida*, 8 F.3d at 669.  Specifically, a defendant may not

properly challenge an indictment, sufficient on its face, on the ground that the

allegations are not supported by adequate evidence.  *United States v. Jensen*, 93

F.3d 667, 669 (9th Cir. 1996).  Therefore, a motion to dismiss an indictment may

not be used as a device for summary trial of the evidence.  *Boren*, 278 F.3d at 914;

*Jensen*, 93 F.3d at 669.

## B.  Motion to Sever

   Federal Rule of Criminal Procedure 14(a) provides that "[i]f the

joinder of offenses or defendants in an indictment . . . appears to prejudice a

defendant or the government, the court may order separate trials of counts, sever

the defendants' trials, or provide any other relief that justice requires."  Joinder is

"the rule rather than the exception," *United States v. Armstrong*, 621 F.2d 951, 954

(9th Cir. 1980), and accordingly, "Rule 14 sets a high standard for a showing of

prejudice." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994).

Defendant must show that a joint trial is "so manifestly prejudicial as

to require the trial judge to exercise his discretion in but one way, by ordering a

separate trial." *United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987)

(quotations omitted); *United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006);

*see also Armstrong*, 621 F.2d at 954 (stating that the burden is on the defendant "to

show that joinder was so manifestly prejudicial that it outweighed the dominant

concern with judicial economy and compelled exercise of the court's discretion to

sever"). Whether to sever counts for purposes of trial is within the discretion of

the court. *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007).

## IV. <u>DISCUSSION</u>

### A.   **Defendant's Motions to Dismiss**

Defendant argues that the counts for violations of 18 U.S.C.

§ 1512(b)(1), Counts 4 and 6, must be dismissed because they are not based on

conduct that contemplates an "official proceeding," a necessary element of the

offense. Defendant further argues that the counts for violations of 18 U.S.C.

§ 1512(b)(3), Counts 5 and 7, must be dismissed because the SSI does not allege that J.W. made any false statements directly to a federal law enforcement officer. Based on the following, the court rejects Defendant's arguments.

### 1.   18 U.S.C. § 1512(b)(1)

18 U.S.C. § 1512(b)(1) provides:

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both.

An "official proceeding" includes, among other things, "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A).[1]  Section § 1512(f)(1) further provides that an

---

[1]  Despite this definition of "official proceeding," § 1512(g)(1) explains that the government need not prove Defendant's state of mind as to whether the proceeding is a *federal* proceeding:

> In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance--
> (1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency[.]

"official proceeding need not be pending or about to be instituted at the time of the offense . . . ."

Defendant's Motion is the second time he has moved for dismissal of Counts 4 and 6.  Defendant had previously argued that (1) *Arthur Andersen, LLP v. United States*, 544 U.S. 696 (2005), requires an indictment to allege that the accused acted in contemplation of a particular federal official proceeding, and (2) the SSI does not allege facts that would support the elements of the offense. The court rejected these arguments, finding that *Arthur Andersen* does not create an additional element that must be pled in the SSI and that the allegations in the SSI were sufficient because they tracked the language of § 1512(b)(1), gave Defendant notice of the basis of the charges against him, and neither conflict with nor negate that Defendant acted in contemplation of an "official proceeding."  *See United States v. Ho*, 2009 WL 749535, at *3-4 (D. Haw. Mar. 19, 2009). Defendant's latest arguments do not change this conclusion.

Defendant now argues that these same counts must be dismissed because the conduct that the government has identified -- Defendant's alleged tampering with witness statements to county law enforcement and in a private employer's investigation -- is too far removed from any "official proceeding." Defendant reasons that this conduct -- to the extent it can support a violation of any

witness tampering statute -- is directed to a violation of § 1512(b)(3), which criminalizes tampering with witness statements to a law enforcement officer, and therefore cannot also support a violation of § 1512(b)(1).  In other words, Defendant seeks the court to draw a line between conduct that violates § 1512(b)(1) and § 1512(b)(3) by finding that tampering with a witness in a law enforcement investigation that precedes an official proceeding is not a violation of § 1512(b)(1).  The court declines Defendant's invitation.

As an initial matter, the plain language of § 1512(b)(1) does not appear to be limited to any particular scenario or timing.  That § 1512(b)(1) includes no timing limitation is confirmed by § 1512(f)(1), which eschews any timing requirement for the "official proceeding" by providing that an "official proceeding need not be pending or about to be instituted at the time of the offense . . . ."  Indeed, Congress adopted this language so that §1512(b)(1) would encompass a Defendant's actions even before an investigation has begun.  Specifically, the 1982 Senate Report explains that § 1512(f)(1) expands the scope of § 1512(b)(1) to encompass acts that occur even before a crime is reported, much less investigated:

///

///

> The first [(f)(1)][2] obviates the requirement that there be
> an official proceeding in progress or pending.  The
> Committee felt that this increases the scope of the section
> by expanding the galaxy of witnesses and victims the
> protections of its language is meant to embrace.
> Intimidation offenses are particularly insidious and do
> violence to traditional notions of justice because no one
> can be convicted of a crime which is not reported.
> *Subsection [(f)(1)], among other things, specifically
> reaches intimidation offenses before a crime is reported
> to the appropriate authorities*.

Judiciary Comm., 97th Cong., Victim and Witness Protection Act of 1982, S. Rep.

No. 97-532, at 19 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3 (emphasis added).

Nor does § 1512(b)(3) appear to limit the scope of § 1512(b)(1).

Section 1512(b)(3) states a violation for knowingly corruptly persuading another

person with intent to hinder, delay, or prevent the communication to a federal law

enforcement officer of information relating to the commission or possible

commission of a federal offense.  It is axiomatic that a single act or course of

conduct -- in this case, convincing J.W. to give a false statement to MPD and in a

witness statement -- may violate more than one criminal statute, and nothing in the

---

[2]  The Senate Report refers to subsection (d)(1), which, due to amendments, now
correlates § 1512(f)(1).  *See* Criminal Law and Procedure Technical Amendments Act of 1986,
Pub. L. No. 99-646, 100 Stat. 3592 (redesignating subsections (a) through (f) as subsections (b)
through (g) respectively); Corporate Fraud Accountability Act of 2002, Pub. L. No. 107-205,
116 Stat. 745 (redesignating subsections (c) through (i) as subsections (d) through (j)).

statutory framework suggests that the same conduct cannot be the basis for violations of different sections of the statute.[3]  So long as the government can prove the elements of these separate violations, it does not matter that the violations stem from the same conduct.

The court further rejects Defendant's argument that an interpretation of "official proceeding" allowing the government to assert a violation under these circumstances makes § 1512(b)(3) superfluous because "every statement to any kind of law enforcement officer is also a statement in a future official proceeding." Def.'s Mot. 1 Reply 4.  Defendant's concern is illusory -- Defendant ignores that the government must still prove the nexus between the obstructive act and the official proceeding.  *See Arthur Andersen*, 544 U.S. at 707-08.  A defendant may

---

[3]  Contrary to Defendant's argument, other courts have not construed § 1512(b)(1) as temporally limited to only after a law enforcement investigation has begun.  *See* Def.'s Mot. 1 11-12.  Rather, the cases cited by Defendant support the unextraordinary proposition that to violate § 1512(b)(1), the defendant must have foreseen an official proceeding and not a mere investigation.  *See United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) ("We are further convinced, based on the statutory definition and the contextual meaning of the term 'official proceeding,' that § 1512 does not apply to routine agency investigations of employee misconduct."); *United States v. Gabriel*, 125 F.3d 89, 105 n.13 (2d Cir. 1997) ("We note that although not argued by Gabriel, the jury also reasonably could have concluded that Gabriel's sole intent was to interfere with the FBI investigation, and if the jury had so concluded, it would have been compelled to find Gabriel innocent [of violating 18 U.S.C. § 1512(b)(1).]" (overruled on other grounds by *Arthur Andersen, LLP v. United States*, 544 U.S. 696 (2005)); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1208 (M.D. Ala. 2006) (rejecting government's argument that an investigation that leads to proceedings in federal court constitutes an "official proceeding"); *see also United States v. Shively*, 927 F.2d 804, 811-12 (5th Cir. 1991) (dismissing conviction on § 1512(b)(1) because the government presented no evidence that the Defendant's intent was anything more than to influence a state civil proceedings where the grand jury indictment occurred two and a half years later).

violate § 1512(b)(3) by believing that he is preventing a witness from communicating with a law enforcement officer, but at the same time not violate § 1512(b)(1) by not foreseeing an official proceeding. Accordingly, every statement to a law enforcement officer is not a statement in a future official proceeding, and every violation of § 1512(b)(3) is not a violation of § 1512(b)(1). Rather, each provision has its own clear boundaries based on Defendant's intentions in "knowingly corruptly persuading" the witness.[4]

In sum, the allegations that Defendant tried to persuade J.W. to give a false statement to MPD and in a witness statement do not preclude that Defendant took these actions with an intent to influence an official proceeding. At trial, the government will ultimately have to prove this nexus and the court understands that Defendant contends that the connection is simply too speculative to support a conviction. *See* Def.'s Mot. 1 13. Whether the government can ultimately carry this burden under the facts, however, is not an issue to be determined on a motion to dismiss, but rather an issue for trial. *See Jensen*, 93 F.3d at 669 (stating that a defendant may not properly challenge an indictment, sufficient on its face, on the

---

[4] It is for these same reasons that the court rejects Defendant's arguments that the court's construction will allow arbitrary enforcement and does not give an individual fair warning of what constitutes a violation.

ground that the allegations are not supported by adequate evidence). Accordingly,

the court DENIES Defendant's Motion to Dismiss Counts 4 and 6 of the SSI.

### 2. *18 U.S.C. § 1512(b)(3)*

Similar to § 1512(b)(1), §1512(b)(3) provides:

> Whoever knowingly uses intimidation, threatens, or
> corruptly persuades another person, or attempts to do so,
> or engages in misleading conduct toward another person,
> with intent to . . . hinder, delay, or prevent the
> communication to a law enforcement officer or judge of
> the United States of information relating to the
> commission or possible commission of a Federal offense
> . . . shall be fined under this title or imprisoned not more
> than 20 years, or both.

Section 1515(a)(4) defines a "law enforcement officer" as "an officer or employee

of the Federal Government, or a person authorized to act for or on behalf of the

Federal Government . . . ." Section 1512(g)(2), however, provides that "no state of

mind need be proved with respect to the circumstance . . . that the judge is a judge

of the United States or that the law enforcement officer is an officer or employee of

the Federal Government or a person authorized to act for or on behalf of the

Federal Government or serving the Federal Government as an adviser or

consultant."

Like the counts stating violations of § 1512(b)(1), the SSI not only

tracks the language and elements articulated in § 1512(b)(3) but also gives

15

Defendant notice of the basis of the charges against him.  Specifically, the SSI

alleges that Defendant persuaded J.W. to give a false statement to MPD (Count 5),

as well as a false statement in her written witness statement (Counts 7).

Accordingly, Counts 5 and 7 both assert that Defendant "did knowingly and

corruptly persuade J.W. to give false information with respect to the physical

assault perpetuated by [Defendant] upon W.G., with the intent to hinder, delay and

prevent the communication to a law enforcement officer of the United States of

information relating to the commission and possible commission of a Federal

offense, namely the deprivation of rights under color of law . . . ."  SSI ¶¶ 21, 29.

Defendant nonetheless argues that the SSI is insufficient because it

does not allege that J.W. made these false statements *directly* to a federal law

enforcement officer.  Defendant interprets this limitation based on a statutory

reading of § 1512(b)(3) with § 1512(g), as well as applying *Arthur Andersen's*

holding and its predecessor *United States v. Aguilar*, 515 U.S. 593 (1995), that

///

///

///

///

///

16

certain witness tampering violations require a "nexus."[5]  The court rejects

Defendant's statutory construction.

According to the plain language of § 1512(b)(3), the government must

prove that Defendant (1) knowingly used intimidation, threatened, or corruptly

persuaded another person, (2) with the intent to hinder, delay, or prevent the

communication of information to a federal official, (3) relating to the commission

or the possible commission of a federal crime.  18 U.S.C.

§ 1512(b)(3); *see also United States v. Carson*, 560 F.3d 566, 580 (6th Cir. 2009)

(citing *United States v. Ronda*, 455 F.3d 1273, 1284 (11th Cir. 2006)); *United*

*States v. Guadalupe*, 402 F.3d 409, 412 (3d Cir. 2005).  The statutory language

does not limit the meaning of "the communication" and no other provision evinces

any requirement that Defendant tamper with a communication that was made

directly to a federal law enforcement official.

Further, courts interpreting § 1512(b)(3) have found that it is not

limited as Defendant suggests.  Rather, § 1512(b)(3) "'criminalizes the *transfer of*

---

[5] *United States v. Aguilar*, 515 U.S. 593 (1995), preceded *Arthur Andersen* and adopted a "nexus" requirement for claims brought pursuant to 18 U.S.C. § 1503, which at the time made it unlawful to "corruptly or by threats or force, or by any threatening letter or communication, influence[ ], obstruct[ ], or impede [ ], or endeavor[ ] to influence, obstruct, or impede, the due administration of justice . . . . "  18 U.S.C. § 1503 (1994).  *Arthur Andersen* noted that *Aguilar* presented a "similar situation" to the facts of its case, and as described above, adopted a nexus requirement for 18 U.S.C. § 1512(b)(2).

misleading information which actually relates to a *potential* federal offense.'"
*Ronda*, 455 F.3d at 1288 (quoting *United States v. Veal*, 153 F.3d 1233, 1252 (11th
Cir. 1998)).  Accordingly, the government need only show that "the misleading
information" was "*likely* to be transferred to a federal agent."  *Veal*, 153 F.3d at
1251; *United States v. Seratta*, 425 F.3d 886, 897 (10th Cir. 2005) ("Proving a
violation of 1512(b)(3) does not depend on the existence of imminency of a federal
investigation, but rather on the possible existence of a federal crime and the
defendant's intention to thwart an inquiry into that crime by officials who happen
to be federal." (quotation signals omitted)); *United States v. Baldyga*, 233 F.3d
674, 680 (1st Cir. 2000) (noting that defendant's conduct violated § 1512(b)(3)
where he hindered government cooperator's "communication with authorities" and
where "the possibility existed that such communication would eventually occur
with federal officials" (emphasis added)); *United States v. Ring*, --- F. Supp. 2d ---,
2009 WL 1808410, at *18 (D. D.C. June 25, 2009) (discussing caselaw and
legislative history to conclude that "[i]t is therefore irrelevant to whom a defendant
made false statements, so long as the statements were made with the intent to
thwart an inquiry into a possible federal crime by officials who happen to be
federal").

Finally, the court rejects that *Arthur Andersen* and/or *Aguilar* require that the government prove a "nexus" as shown through a direct communication between J.W. and a federal law enforcement officer. While the Ninth Circuit has not addressed whether § 1512(b)(3) requires a nexus, other courts have expressly rejected that the nexus requirement developed in *Aguilar* and *Arthur Andersen* applies to § 1512(b)(3) offenses. For example, the Eleventh Circuit has explained that unlike § 1512(b)(1), "'federal jurisdiction under § 1512(b)(3) is based on the federal interest of protecting the integrity of *potential* federal investigations by ensuring that transfers of information to federal law enforcement officers and judges relating to the *possible* commission of federal offenses be truthful and unimpeded.'" *Ronda*, 455 F.3d at 1286-87 (quoting *Veal*, 153 F.3d at 1250). Accordingly, "[§] 1512(b)(3) 'does not depend on the existence or imminency of a federal case or investigation but rather on the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime.'" *Id.* at 1287 (quoting *Veal*, 153 F.3d at 1250).

Courts have relied on these statutory and jurisdictional differences between § 1512(b)(1) and § 1512(b)(3) to find that *Arthur Andersen's* reasoning does not apply to § 1512(b)(3) offenses:

> *Arthur Andersen* interpreted and applied only

> § 1512(b)(2), which explicitly requires that the acts of
> obstruction relate to "an official proceeding."  Unlike
> § 1512(b)(2), § 1512(b)(3) makes no mention of "an
> official proceeding" and does not require that a
> defendant's misleading conduct relate in any way either
> to an "official proceeding" or even to a particular
> ongoing investigation.  *See* 18 U.S.C. § 1512(b)(3); *see
> also United States v. Byrne*, 435 F.3d 16, 24 (1st Cir.
> 2006). There is simply no reason to believe that the
> Supreme Court's holding in *Arthur Andersen* requires
> that we graft onto § 1512(b)(3) "an official proceeding"
> requirement based on statutory language in § 1512(b)(2)
> that does not appear in § 1512(b)(3).

*Id.* at 1288; *see also Carson*, 560 F.3d at 580-81 (adopting reasoning in *Ronda*);

*United States v. Kaplan*, 490 F.3d 110, 126 (2d Cir. 2007) ("With respect to

§ 1512(b)(3), it is unclear whether Arthur Andersen's nexus requirement is

applicable because § 1512(b)(3) does not explicitly refer to an 'official

proceeding.'"); *United States v. Byrne*, 435 F.3d 16, 24 (1st Cir. 2006) ("The

defendant does not explain how subsection (b)(3) might sensibly be read to require

a defendant to 'contemplate' -- to use the term in *Arthur Andersen* -- a 'particular'

'law enforcement officer or judge of the United States' in the same way that one

might 'contemplate' 'any particular official proceeding.'"); *Serrata*, 425 F.3d at

897 ("We agree with these cases that imminence of a federal investigation is of

little or no consequence."); *Guadalupe*, 402 F.3d at 411 ("[P]roving a violation of

18 U.S.C. § 1512(b)(3) does not depend on the existence or imminency of a federal

20

investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime by officials who happen to be federal."); *Veal*, 153 F.3d at 1250 (rejecting application of nexus requirement from *Aguilar* because § 1512(b)(3) "implicate[s] different federal interests, which specifically do not identify as the federal interest a federal judicial proceeding, pending or contemplated"); *Ring*, 2009 WL 1808410, at *17 (collecting and discussing cases rejecting nexus requirement).

The court finds the reasoning of these cases persuasive and agrees that § 1512(b)(3) does not require the nexus described in *Arthur Andersen* to prove a violation. Accordingly, the court holds that the SSI adequately states violations of § 1512(b)(3) by alleging that J.W. made these false statements to MPD and in a witness statement and therefore DENIES Defendant's Motion to Dismiss Counts 5 and 7 of the SSI.

## B.    Defendant's Motion to Sever

Defendant requests that the court sever Counts 1-3, the civil rights counts, from Counts 4-7, the witness tampering counts, so that a jury will not improperly use evidence of the witness tampering counts to infer Defendant's guilt on the civil rights counts. Specifically, Defendant argues that the evidence of the witness tampering is not relevant or necessary for the civil rights counts, and is

otherwise inadmissible on the civil rights counts alone because "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *See* Def.'s Mot. to Sever 5 (quoting Fed. R. Evid. 404b). The court rejects Defendant's arguments.

Defendant's assertion that the jury will unfairly attribute the witness tampering allegations to the civil rights counts does not demonstrate clear, manifest, or undue prejudice mandating severance of the counts. *See United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *Patterson*, 819 F.2d at 1501. As even Defendant admits, evidence on the civil rights counts is admissible in a trial on the witness tampering charges. *See* Def.'s Mot. to Sever 6. Such evidence is not only relevant to show motive for witness tampering, but also is part and parcel of the allegations that Defendant committed witness tampering to influence an "official proceeding" and an investigation regarding a federal offense.

Further, evidence of the witness tampering is relevant and admissible on the civil rights counts. Federal Rule of Evidence 404(b) expressly recognizes that evidence of other crimes may be admissible to prove, among other things, knowledge or absence of mistake or accident. Evidence that Defendant persuaded J.W. to give false statements regarding the very events that make up the color of law claims is admissible to show consciousness of guilt, and indeed, multiple

22

courts have admitted such evidence under similar circumstances.  *See, e.g.*, *United States v. Begay*, 567 F.3d 540, 552 (9th Cir. 2009) (finding evidence that defendant intimidated two government witnesses was admissible to show consciousness of guilt); *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995) (affirming district court's determination that an attempt to intimidate witnesses is admissible to show "consciousness of guilt-second only to a confession in terms of probative value"); *see also United States v. Rock,* 282 F.3d 548, 552 (8th Cir. 2002) (affirming denial of the defendant's motion to sever felon-in-possession charge from witness tampering charge; stating "[w]here evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together"); *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir. 1993) ("It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt . . . ."); *United States v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990) (applying general rule in affirming trial court's denial of motion to sever that "evidence of a defendant's attempts at intimidation of a witness or of a person cooperating with a government investigation is admissible to demonstrate a defendant's 'consciousness of guilt' of the charges which were the subject of the

witness' testimony or cooperation"); *United States v. Fagan*, 821 F.2d 1002, 1007

(5th Cir. 1987) (explaining that evidence of mail fraud is admissible in a trial for

witness tampering to show motive, while evidence of witness tampering is

admissible in a trial for mail fraud to show "guilty knowledge"); *United States v.*

*Monahan*, 633 F.2d 984, 985 (1st Cir. 1980) (stating that "[e]vidence of threats to

witnesses can be relevant to show consciousness of guilt," particularly where a

defendant's conduct "implies a knowledge and fear of particular and damaging

testimony intimately related to the prosecution at hand").

      Defendant nonetheless argues that evidence of alleged witness

tampering may be innocuous and does not necessarily support the inference of

consciousness of guilt.[6]  Def.'s Mot. to Sever Reply 3.  Defendant therefore

suggests that, similar to flight instructions, the evidence must first support a chain

of inferences connecting Defendant's behavior to guilt of the crime charged.  *Id.*

The court rejects this argument as wholly off base -- the issue presented regarding

---

[6] Defendant also argues for the first time in his Reply that even if the witness tampering evidence was admissible under Rule 404(b), it is inadmissible under Rule 403.  Def.'s Mot. to Sever Reply 5.  Defendant presents this argument in only the most vague and conclusory fashion such that the court cannot realistically determine what evidence will be presented to perform a Rule 403 analysis.  It is fair enough to say, however, that Defendant's argument does not carry his burden of showing why bifurcation is necessary.  Further, any prejudice due to joinder may be limited through an instruction directing the jury to separately consider each count.  *See Davis v. Woodford* 384 F.3d 628, 639 (9th Cir. 2004); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (stating that a jury is presumed to have followed the court's instructions).

flight instructions is whether the government is entitled to an instruction that the jury may infer guilt from flight and does not address whether the evidence is admissible in general.  Accordingly, Defendant's comparisons to flight instructions are unhelpful in determining whether evidence of witness tampering is admissible on the civil rights counts.[7]

In sum, the evidence on the witness tampering counts is intertwined with the color of law counts and Defendant has not carried his burden to show that a joint trial is manifestly prejudicial or that bifurcation would serve any purpose other than to delay trial.  The court therefore DENIES Defendant's Motion to Sever and/or for Bifurcation.

## V.  <u>CONCLUSION</u>

For the reasons discussed above, the court: (1) DENIES Defendant's Motion to Dismiss Counts 4 and 6 of the SSI; (2) DENIES Defendant's Motion to Dismiss Counts 5 and 7 of the SSI; and (3) DENIES Defendant's Motion to Sever

---

[7] In any event, the court also notes tampering with a witness' statements about the crime at issue -- in this case, Defendant's alleged use of force under color of law -- is very different than a defendant's flight, which may be for a multitude of reasons.  *See United States v. Dixon*, 201 F.3d 1223, 1232 (9th Cir. 2000) (discussing facts that may support inference from flight to consciousness of guilt).

Civil Rights Counts from Witness Tampering Counts, or, in the Alternative, to

Bifurcate Trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 20, 2009.



_/s/ J. Michael Seabright_____
J. Michael Seabright
United States District Judge

*United States v. Ho*, Cr. No. 08-00337 JMS, Order (1) Denying Defendant's Motion to Dismiss Counts 4 and 6 of the Second Superceding Indictment; (2) Denying Defendant's Motion to Dismiss Counts 5 and 7 of the Second Superceding Indictment; and (3) Denying Defendant's Motion to Sever Civil Rights Counts from Witness Tampering Counts, Or, in the Alternative, to Bifurcate Trial